NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

OLGA C.,
*Appellant*,

v.

DEPARTMENT OF CHILD SAFETY, R.C., E.C., J.C., G.O., E.O.,
TOHONO O'ODHAM NATION,
*Appellees*,

No. 1 CA-JV 20-0397
FILED 4-29-2021

Appeal from the Superior Court in Maricopa County
No. JD36659
The Honorable Karen A. Mullins, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee Department of Child Safety*

Law Office of Justin Fernstrom, Mesa
By Justin Fernstrom
*Counsel for Appellee Tohono O'odham Nation*

---

**MEMORANDUM DECISION**

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge David B. Gass and Judge Michael J. Brown joined.

---

**W E I N Z W E I G**, Judge:

**¶1** Olga C. ("Mother") appeals the juvenile court's order terminating her parental rights to J.C., G.O. and E.O. (collectively, the "Children"). We affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2** Mother is the Children's biological parent.[1] In November 2018, the Department of Child Services ("DCS") secured temporary custody of the Children and petitioned the juvenile court to find them dependent on grounds of neglect and domestic abuse. The Tohono O'odham Nation ("Nation") intervened because G.O. and E.O. are eligible for membership in the Nation. The Children were found dependent in October 2019.

**¶3** DCS provided Mother with parent-aide services, individual counseling (domestic violence and anger management components), a psychological evaluation, supervised visitation, and transportation services. Mother was closed out of domestic violence counseling and parent-aide services for lack of attendance.

**¶4** Around this time, DCS asked Mother to undergo a psychological evaluation to better understand her needs. After Mother refused for nearly a year, a clinical psychologist examined Mother in September 2020. The psychologist concluded that Mother was unlikely to achieve minimally adequate parenting skills in the near term. The psychologist concluded Mother likely suffered from borderline intellectual functioning, unspecified anxiety disorder and other substance abuse disorders.

**¶5** Given Mother's lack of progress, DCS moved, in November 2019, to terminate her parental rights on the ground of nine-months' time-in-care, later adding fifteen-months' time-in-care. The juvenile court held a

---

[1] The court also terminated the parental rights of the Children's fathers, but they are not parties to this appeal.

contested severance hearing over two days in October 2020. Mother was present, represented by counsel and testified on her own behalf. The case managers for DCS and the Nation testified. The Nation's case manager testified that DCS made active but unsuccessful efforts to reunify Mother and the Children, and that returning G.O. and E.O. to their parents would likely result in serious emotional or physical harm to them. The juvenile court then terminated Mother's parental rights to the Children on both time-in-care grounds and found termination was in the Children's best interests.

¶6           Mother timely appealed. We have jurisdiction. *See* A.R.S. § 8-235(A).

## DISCUSSION

¶7           The juvenile court must find at least one statutory ground for termination exists by clear and convincing evidence, and that termination is in the child's best interests by a preponderance of the evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 282, 288, ¶¶ 9, 41 (2005). "[W]e will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We accept the court's findings of fact unless no reasonable evidence supports them, *id.*, and view the evidence in the light most favorable to upholding the order, *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 97, ¶ 20 (App. 2009).

¶8           Mother contends the order terminating her parental rights to G.O. and E.O. should be reversed because the juvenile court did not "expressly" find that DCS made active efforts to reunify her family and DCS did not make active efforts. Similarly, for all three children, Mother argues that DCS failed to make reasonable efforts to reunify the family.

### I.    Active Reunification Efforts (G.O. and E.O.)

¶9           The Indian Child Welfare Act of 1978 ("ICWA") applies to G.O. and E.O. because each qualifies as an "Indian child" under 25 U.S.C. § 1903(4). To terminate Mother's parental rights to G.O. and E.O., DCS thus needed to prove, by clear and convincing evidence, that (1) DCS made active efforts to prevent the breakup of the Indian family, (2) those efforts were unsuccessful and (3) Mother's continued custody was likely to result in serious emotional or physical damage to the children. *See* 25 U.S.C. § 1912(d), (f); *accord* Ariz. R.P. Juv. Ct. 66(C); *see also Yvonne L. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 415, 421, ¶ 26 (App. 2011) (burden of proof is by clear and convincing evidence). DCS need not, however, provide a parent with every imaginable service designed to prevent the breakup of the Indian

family before the court may find that "active efforts" took place. *Yvonne L.*, 227 Ariz. at 423, ¶ 34. Rather, DCS must provide the parent with the necessary "time and opportunity to participate in programs designed to help" them become effective parents. *Id.* (quoting *Maricopa Cnty. Juv. Action No. JS–501904*, 180 Ariz. 348, 353 (App. 1994)).

**¶10** Mother argues the juvenile court erroneously terminated her parental rights because it never "expressly" found that DCS made active reunification efforts and DCS did not make active efforts. We disagree.

**¶11** First, the juvenile court found "beyond a reasonable doubt" that (1) DCS was "ready and willing to provide remedial services," but (2) Mother "failed to substantially engage in those services." In relevant part, the court held:

> [ICWA] mandates DCS make active efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family. Severance and breakup of the Indian family is appropriate only if those efforts are proven unsuccessful. Here,
>
> The court finds beyond a reasonable doubt that DCS has been ready and willing to provide remedial services and rehabilitative programs to Mother designed to prevent the breakup of the Indian family, and that Mother has failed to substantially engage in those services to the extent necessary to remedy the circumstances that led to the Children's out-of-home placement.

**¶12** This ruling was sufficient. "The primary purpose for requiring a court to make express findings of fact and conclusions of law is to allow the appellate court to determine exactly which issues were decided and whether the lower court correctly applied the law." *See Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 241, ¶ 24 (App. 2012).

**¶13** Second, reasonable evidence supports the juvenile court's finding that DCS made active but unsuccessful efforts to prevent a family breakup. DCS offered Mother a litany of reunification services throughout the dependency that proved unsuccessful because she failed to complete them. Mother was closed out of parent-aide referrals in March 2019 and in April 2020 because she did not participate or respond. She was closed out of counseling in March 2019, after just three months, because she attended only one individual session and no group sessions. She showed interest in joining a domestic-violence support group but did not attend any sessions.

She declined to participate in the psychological evaluation, even after ordered by the court in October 2019. Mother also received but often missed supervised visitation with the Children, even when held remotely due to the Covid-19 pandemic. DCS provided Mother with housing resources and information about domestic-violence shelters, but Mother did not use them. And last, the Nation's case worker testified that DCS made active efforts to provide remedial services and programs designed to prevent the breakup of the Indian family, but those efforts proved unsuccessful.

**¶14**        Still, Mother contends DCS failed to make active efforts to address her cognitive limitations which hurt her chances of success. But the juvenile court heard the evidence and rejected this argument. We do not reweigh the evidence or redetermine the credibility of witnesses. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151-52, ¶¶ 18-19 (2018). Mother does not dispute she received many services. And again, the record shows that Mother poorly engaged with the services DCS did offer. *See supra* ¶¶ 3, 13. In sum, reasonable evidence supports the superior court's findings by clear and convincing evidence that DCS made active efforts to provide remedial programs designed to prevent the breakup of the Indian family, and those efforts failed.

## II.        Reasonable Reunification Efforts (J.C., G.O. and E.O.)

**¶15**        For all three children, DCS needed to make reasonable efforts to reunify the family. *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005). Reasonable efforts "give parents the time and opportunity to participate in programs that could help them become effective parents prior to moving for severance." *Alyssa W. v. Justin G.*, 245 Ariz. 599, 601, ¶ 10 (App. 2018).

**¶16**        Mother similarly argues that DCS did not make reasonable efforts to reunify the family. We disagree because DCS satisfied the "active efforts" standard under ICWA, which is as or more stringent than the "reasonable efforts" standard. *See Vanessa W. v. Dep't of Child Safety*, 2018 WL 2147213, *3, ¶ 16 (App. 2018).

## CONCLUSION

¶17      For these reasons, we affirm the termination of Mother's parental rights to J.C., G.O. and E.O.



AMY M. WOOD • Clerk of the Court
FILED: AA