282 P.3d 437

**RUBEN M., Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, Latina M., Isaiah M., Reynaldo M., Estella T., Appellees.**

**No. 1 CA–JV 12–0038.**

Court of Appeals of Arizona, Division 1, Department A.

July 31, 2012.

insufficiently specific to comply with Arizona Rule of Procedure for the Juvenile Court 66(F)(2)(a) ("Rule 66(F)(2)(a)"). We hold that: 1) the admission of testimony regarding Father's juvenile record is not reversible error because Father failed to demonstrate prejudice; 2) Rule 66(F)(2)(a) requires the findings of fact and conclusions of law to provide sufficient detail for an appellate court to determine whether the juvenile court correctly applied the law; and 3) in this case, the court's findings and conclusions were sufficiently specific to comply with Rule 66(F)(2)(a). Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Father and Josefina T. ("Mother") are the parents of I.M., L.M., R.M., and E.T. ("the children"). L.M. told her school counselor that her father was physically and sexually abusing her and the school notified the police. Phoenix police interviewed Mother and conducted individual forensic interviews with the children. The children reported that Father was physically, sexually, and emotionally abusive. Mother also alleged that Father was physically abusive to her and the children. Father was indicted on multiple criminal counts stemming from the allegations of abuse. The children's guardian *ad litem* ("GAL") filed a petition for dependency with respect to both parents and the three eldest children. The Arizona Department of Economic Security ("ADES") took the children into temporary custody and placed them with their maternal grandparents. ADES was then substituted as the petitioner and filed an additional dependency petition for E.T. The juvenile court found the children dependent with respect to Father, ordering a case plan of severance and adoption as to Father.

¶ 3 In May 2011, ADES filed a motion to terminate Father's parental rights on the grounds that he abused the children, a violation of Arizona Revised Statutes ("A.R.S.") section 8–533(B)(2) (Supp. 2011).[1] ADES also alleged that severance was in the best interest of the children.

Thomas C. Horne, Arizona Attorney General By Michael Valenzuela, Assistant Attorney General, Phoenix, Attorneys for Appellee Arizona Department of Economic Security.

Christina Phillis, Maricopa County Juvenile Public Advocate By Suzanne W. Sanchez, Deputy Juvenile Public Advocate, Mesa, Attorneys for Appellant Ruben M.

## OPINION

KESSLER, Judge.

¶ 1 Appellant Ruben M. ("Father") appeals the juvenile court's order terminating his parental rights to his four children; I.M., L.M., R.M., and E.T. He argues that the court erred in admitting evidence of his juvenile criminal record and that the court's findings of fact and conclusions of law were

1. We cite to the current version of the statute when there are no relevant substantive changes.

¶ 4 At the severance hearing, Father denied ever abusing the children. Mother, however, testified that Father repeatedly physically and emotionally abused her and the children. The court also admitted into evidence letters Father wrote to Mother urging her and the children to lie under oath on his behalf.

¶ 5 A Phoenix police officer who conducted the forensic interviews with two of the children testified that she believed the children understood the allegations, had not been coached, and told the truth during their interviews. A Child Protective Services ("CPS") investigator and a CPS case manager both testified that none of the children ever recanted their allegations and that there was no reason to doubt the veracity of the allegations of abuse. Both the CPS investigator and the case manager testified termination of Father's parental rights was in the best interest of the children.

¶ 6 The children's GAL questioned Father about statements he made to police regarding a prior delinquency adjudication for sexual conduct with a minor. Father testified that when he was a minor he was convicted of sexual contact with his 14-year-old or 15-year-old girlfriend. The GAL asked a few questions before Father's lawyer objected, stating: "[W]e're getting into character evidence again and it's not relevant to whether or not this happened...." Overruling the objection, the judge said, "I think it's highly relevant," and allowed the GAL to continue questioning Father about his juvenile record.

¶ 7 After Father had testified, he told the juvenile court he no longer wanted to contest the termination petition and the court found he knowingly, intelligently, and voluntarily waived his right to contest the allegations.[2] Based on the evidence presented, the court ordered termination on the grounds that Father abused his children and that termination of the parent-child relationship was in the best interest of the children. The court concluded by ordering ADES to file proposed findings of fact and conclusions of law within ten days.

¶ 8 ADES filed its proposed factual findings and legal conclusions two months past the court-ordered deadline. Three days later, Father objected to the findings, arguing in part that they merely recited the original allegations in the severance motion as conclusions of law, lacking "specific facts and details actually elicited from the three days of testimony at trial or from admitted documents."

¶ 9 The juvenile court, apparently unaware of Father's objection, signed ADES's proposed findings. The court found that ADES proved by clear and convincing evidence that Father "willfully abused" his children, grounds for the termination of the parent-child relationship under A.R.S. § 8-533(B)(2). The court also found that ADES proved by a preponderance of the evidence that severance would be in the children's best interest, because "[t]he children would suffer a detriment if Father's rights were not terminated in that it is likely that the children would continue to be abused or harmed by Father if his rights were to remain intact."

¶ 10 ADES filed a response to Father's objection, stating that if Father wanted more specificity, he could "submit his own proposed Findings of Fact, Conclusions of Law, and Order to the Court through his counsel." The court entered an order declining to require ADES to file any amended findings and did not amend its findings. This Court has jurisdiction pursuant to A.R.S. §§ 8-235(A) (2007), 12-120.21(A)(1) (2003), and 12-2101(A)(1) (Supp.2011).

## DISCUSSION

¶ 11 Father asks this Court to reverse the order terminating his parental rights on the grounds that the juvenile court erroneously admitted evidence of his prior juvenile adjudication and made insufficient specific findings of fact to support the termination order.

■ ¶ 12 The Due Process Clause of the United States Constitution protects parents' fundamental liberty interest in "the care, custody, and management" of their children.

---

**2.** ADES does not argue that Father's waiver of his right to contest the allegations at trial forfeits his right to appeal. Accordingly, we do not address this issue.

*Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). But the state also has a compelling interest in protecting child welfare. *See Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) ("the State has an urgent interest in the welfare of the child"); *Ariz. Dep't of Econ. Sec. v. Leonardo*, 200 Ariz. 74, 84, ¶ 29, 22 P.3d 513, 523 (App.2001) ("the state's interest in protecting children from abuse and neglect must be balanced against parental rights"). In balancing these interests, the court may order severance as long as it provides "fundamentally fair procedures." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24, 110 P.3d 1013, 1018 (2005) (quoting *Santosky*, 455 U.S. at 754, 102 S.Ct. 1388).

## I. Admission of Father's Juvenile Criminal History

¶ 13 Normally we review evidentiary rulings for abuse of discretion. *State v. Alvarez*, 228 Ariz. 579, 580, ¶ 3, 269 P.3d 1203, 1204 (App.2012). A court abuses its discretion when it misapplies the law. *See Merlina v. Jejna*, 208 Ariz. 1, 3, ¶ 6, 90 P.3d 202, 204 (App.2004). However, "an objection on one ground does not preserve the issue on another ground" and "[w]hen a party fails to object properly, we review solely for fundamental error." *State v. Lopez*, 217 Ariz. 433, 434–35, ¶ 4, 175 P.3d 682, 683–84 (App.2008).

¶ 14 Rule 609(d) of the Arizona Rules of Evidence prohibits the admission of juvenile adjudications to impeach a witness in all hearings and trials except under limited circumstances in criminal proceedings. When the children's GAL questioned Father about his prior juvenile offense, defense counsel objected only to relevance. Had the defense objected on the grounds of a Rule 609 violation, and with enough specificity to allow the juvenile court to rule on that issue, the issue would have been preserved on appeal. Father failed to object on any grounds that would suggest a violation of Rule 609. Because Father waived this issue, we must affirm the superior court's ruling absent fundamental error. *See id.* at 435, ¶ 4, 175 P.3d at 684.

¶ 15 Although the doctrine of fundamental error is rarely used in civil cases, it is appropriate in situations that may result in the denial of a constitutional right. *Monica C. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 89, 94, ¶ 23, 118 P.3d 37, 42 (App.2005) (quoting *Bradshaw v. State Farm Mut. Auto. Ins.*, 157 Ariz. 411, 420, 758 P.2d 1313, 1322 (1988)). This Court applies the fundamental error framework here "[b]ecause of the constitutional ramifications inherent in termination proceedings." *Id.*

¶ 16 Fundamental error is error that goes "to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005) (quoting *State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984)). To prevail on a claim of fundamental error, the appellant must also demonstrate prejudice. *Id.* at ¶ 20.

¶ 17 On appeal, Father does not argue that the prosecutor's questions pertaining to his juvenile record prejudiced him, but even if he did, we would find that position untenable. On review, we construe the facts in the light most favorable to sustaining the juvenile court's ruling. *See Maricopa Cnty. Juv. Action No. JS–8490*, 179 Ariz. 102, 106, 876 P.2d 1137, 1141 (1994). Here, evidence of Father's juvenile record was just a small piece of the abundant evidence ADES submitted against him. Given the other overwhelming evidence concerning Father's abuse of the children, even if the court erred in admitting evidence of Father's juvenile adjudication, he suffered no prejudice, and thus we decline to reverse on this ground.

## II. Specificity of Factual Findings

¶ 18 Father also urges us to reverse the court's severance order because the court's findings of fact and conclusions of law lacked sufficient specificity to comply with Rule 66(F)(2)(a). We disagree with Father.

¶ 19 To prevail in a petition to sever parental rights, the petitioner must prove by clear and convincing evidence the presence of at

least one of the conditions for severance under A.R.S. § 8–533(B). *Valerie M. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 331, 334, ¶ 9, 198 P.3d 1203, 1206 (2009). The court must also find by a preponderance of the evidence that severance would be in the best interest of the child. *Id.* If the court finds that a petitioner has met its burden of proof, Rule 66(F)(2)(a) requires that the court "[m]ake specific findings of fact in support of the termination of parental rights...."

■■■■ ¶ 20 We have yet to articulate what constitutes sufficiently specific findings under Rule 66(F)(2)(a). We review interpretations of court rules *de novo*, employing the principles of statutory construction to best reflect the intent of the Arizona Supreme Court. *See Andrew R. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 453, 456–57, ¶ 16, 224 P.3d 950, 953–54 (App.2010); *Patterson v. Mahoney*, 219 Ariz. 453, 456, ¶ 9, 199 P.3d 708, 711 (App.2008). Usually, the plain meaning of the text is the best reflection of intent and we look no further unless the language is ambiguous or the plain meaning would lead to an absurd result. *See State v. Ross*, 214 Ariz. 280, 283, ¶ 22, 151 P.3d 1261, 1264 (App.2007); *see also In re Estate of Gordon*, 207 Ariz. 401, ¶ 19, 87 P.3d 89, 93 (App.2004) (when "statute's meaning is plainly apparent from its language, we simply are not authorized to add anything to it unless an absurdity would otherwise result"). Thus, when construing a rule, we "give effect to each word, phrase and clause included by the supreme court." *Ariz. Dep't of Revenue v. Superior Court*, 189 Ariz. 49, 52, 938 P.2d 98, 101 (App.1997). However, when there is ambiguity, we look to the scheme as a whole, considering the context, subject matter, historical background, effects, consequences, and its spirit and purpose. *Ross*, 214 Ariz. at 283, ¶ 22, 151 P.3d at 1264. We also read rules and statutes in conjunction with each other and harmonize them whenever possible. *State v. Old West Bonding Co.*, 203 Ariz. 468, 471, ¶ 12, 56 P.3d 42, 45 (App.2002).

¶ 21 Because of the fundamental right at stake in severance proceedings, the legislature has imposed significant procedural safeguards to ensure due process. A.R.S. § 8–538(A) requires that "[e]very order of the court terminating the parent-child relationship ... shall be in writing and shall recite the findings on which the order is based...." Rule 66(F) implements this statutory requirement, stating: "All findings and orders shall be in the form of a signed order or set forth in a signed minute entry" and if the party moving for termination meets its burden of proof, subsection (2)(a) requires the court to "[m]ake specific findings of fact in support of the termination of parental rights...."

¶ 22 Thus, to terminate parental rights, the plain meaning of Rule 66(F)(2)(a) requires the court to conclude that the petitioner has proved by clear and convincing evidence that at least one of the statutory grounds for termination is met, and that the petitioner has proved by a preponderance of the evidence that severance of parental rights would be in the best interest of the child. The plain meaning also indicates that the court must specify at least one factual finding sufficient to support each of those conclusions of law.

¶ 23 It is undisputed that the juvenile court made the required conclusions of law necessary to terminate Father's parental rights. The issue is whether the factual findings in support of these conclusions are specific enough to comply with Rule 66(F)(2)(a). In determining the level of specificity required, it is instructive to look at the purpose behind such findings, as well as interpretations of other similar rules and statutes.

■■■ ¶ 24 The primary purpose for requiring a court to make express findings of fact and conclusions of law is to allow the appellate court to determine exactly which issues were decided and whether the lower court correctly applied the law. *See Miller v. Bd. of Supervisors of Pinal Cnty.*, 175 Ariz. 296, 299, 855 P.2d 1357, 1360 (1993); *City of Tucson v. Whiteco Metrocom, Inc.*, 194 Ariz. 390, 396–97, ¶¶ 23–24, 983 P.2d 759, 765–66 (App.1999) (remanding because findings failed to address issues necessary to review the court's application of the law). The purpose has never been for a reviewing court to weigh the evidence, as that is a task best left for the finder of fact, and when an appellant raises a claim of insufficient evidence, we will

accept the juvenile court's findings of fact unless no reasonable evidence supports those findings. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (2002).

¶ 25 Consistent with this purpose, findings of fact and conclusions of law should be sufficiently specific to enable the appellate court to provide effective review. This conclusion is consistent with our interpretation of analogous rules and statutes that require express factual findings. We demand the level of specificity necessary to determine whether the trial court correctly applied the law. *See Gilliland v. Rodriquez*, 77 Ariz. 163, 167, 268 P.2d 334, 337 (1954) (holding that Arizona Rule of Civil Procedure 52(a) requires the court to find only the ultimate facts, not the evidentiary facts upon which the ultimate facts are based). Findings must include "all of the 'ultimate' facts—that is, those necessary to resolve the disputed issues." *Elliott v. Elliott*, 165 Ariz. 128, 132, 796 P.2d 930, 934 (App.1990).

¶ 26 When a question of law is complicated, the level of detail required for proper review is necessarily greater. *See Murphy Farrell Dev., L.L.L.P. v. Sourant*, 229 Ariz. 124, 128–29, ¶¶ 13–17, 272 P.3d 355, 359–60 (App.2012) (remanding for failure to separately address each of the disputed issues in findings); *see also Miller*, 175 Ariz. at 299, 855 P.2d at 1360 (finding court erred in failing to issue findings sufficiently detailed for the appellate court to test the validity of the trial court's judgment); *Elliott*, 165 Ariz. at 132–33, 796 P.2d at 934–35 (remanding in part for failure to provide method of calculation for child support award). Thus, in some severance cases, the trial court should provide more detailed findings of fact and conclusions of law so this Court can provide effective appellate review.

¶ 27 Here, however, the grounds for the court's judgment are simple and straightforward so the court's more summary findings are sufficient. To support its first conclusion of law, the court need only have found that Father either "willfully abused" his children or "failed to protect" them, "so as to cause a substantial risk of harm to the child's health or welfare." The court satisfied this require-

ment by finding that "Father has repeatedly, willfully abused his children and caused substantial risk of harm to the children's health and welfare." To satisfy its second legal conclusion, that severance of the parent-child relationship best served the children's interest, the court's findings "must include a finding as to how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS–500274*, 167 Ariz. 1, 5, 804 P.2d 730, 734 (1990). Here the court found that termination would provide the children "with a safe, stable environment," and that they "would suffer a detriment if Father's rights were not terminated" because it is likely that they "would continue to be abused or harmed by Father."

¶ 28 These ultimate findings are sufficiently specific to enable this Court to decide whether the juvenile court correctly applied the law. Therefore, we decline to remand for further findings of fact.

### CONCLUSION

¶ 29 For the foregoing reasons, we affirm the juvenile court's termination of Father's parental rights.

CONCURRING: PHILIP HALL, Presiding Judge, and ANN A. SCOTT TIMMER, Judge.