NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MARIANNA R., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.R., J.F., *Appellees*.

No. 1 CA-JV 21-0203
FILED 11-9-2021

Appeal from the Superior Court in Maricopa County
No. JD37726
The Honorable Michael J. Herrod, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee*

**MEMORANDUM DECISION**

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge Maria Elena Cruz joined.

**B A I L E Y**, Judge:

¶1        Marianna R. ("Mother") appeals from the termination of her parental rights to her two children.[1]  Because the superior court's order is supported by reasonable evidence, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        "We view the facts in the light most favorable to upholding the juvenile court's order." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010) (citation omitted).

¶3        Mother is the biological parent of two children—a son, J.F., born September 2018, and a daughter, J.R., born December 2019.  When J.F. was approximately ten months old, the Department of Child Safety ("DCS") alleged he was dependent as to Mother due to neglect.  Mother did not contest the dependency, and the superior court ordered J.F. be placed in out-of-home care with a case plan of reunification concurrent with severance and adoption.

¶4        DCS provided Mother with services, including a psychological evaluation, parent aide, parenting classes, mental health treatment, substance abuse testing and treatment, visitation, case management, and transportation services.

¶5        In December 2019, Mother gave birth to J.R., who remained in Mother's custody.  Because Mother had stable housing and had made "some behavioral changes," the court granted DCS's request to return J.F. to Mother's custody.

¶6        One month later, however, Mother stopped attending counseling, lost contact with DCS, and she and the children became homeless.  DCS petitioned to change J.F.'s custody and to establish J.R.'s dependency.  The superior court ordered both children be placed with a maternal aunt.

¶7        DCS continued providing Mother reunification services, including a psychological consultation.  Mother attended several initial intake appointments with different providers but failed to attend mental health counseling, substance abuse treatment, domestic violence therapy, or parent aide services, and she was discharged from these services for lack of participation.  Mother stopped drug testing in June 2020 because, as she

_____

[1] The children's father is not a party to this appeal.

admits, "the results would [have been] positive," and she had not visited the children since December 2020.

¶8        The superior court granted DCS's motion to change the case plan to severance and adoption and held a termination hearing in May 2021.  At the hearing, Mother acknowledged that she was closed out of the reunification services because she failed to participate.  The court terminated Mother's parental rights on the grounds of six months' time-in-care as to both children, and fifteen months' time-in-care as to J.F.  *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(8)(b)-(c).

¶9        We have jurisdiction over Mother's timely appeal under Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rules of Procedure for the Juvenile Court 103 and 104.

## DISCUSSION

¶10        To terminate parental rights, the superior court must find clear and convincing evidence of at least one statutory ground in A.R.S. § 8-533(B) and must find by a preponderance of the evidence that termination is in the child's best interests.  A.R.S. § 8–537(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 281, 288, ¶¶ 7, 41 (2005); *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 239-40, ¶ 19 (App. 2012).  We will affirm the superior court's order terminating parental rights if it is supported by reasonable evidence.  *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).

¶11        Termination under the six-month-time-in-care ground requires proof

> [t]he child who is under three years of age has been in an out-of-home placement for a cumulative total period of six months or longer pursuant to court order and the parent has substantially neglected or wilfully refused to remedy the circumstances that cause the child to be in an out-of-home placement, including refusal to participate in reunification services offered by the department.

A.R.S. § 8–533(B)(8)(b).  The superior court must also find DCS "made a diligent effort to provide appropriate reunification services."  A.R.S. § 8–533(B)(8).

¶12        Mother does not challenge the superior court's findings on the fifteen-month ground for J.F. or that severance was in the children's best interests.  She has therefore conceded the accuracy of those findings on

appeal. *See Britz v. Kinsvater*, 87 Ariz. 385, 388 (1960); *see also Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577-78, ¶¶ 5-6 (App. 2017) ("[W]e adhere to the policy that it is generally not our role to *sua sponte* address issues not raised by the appellant."); *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 14 n.6 (App. 2011) (recognizing the failure to develop an argument on appeal usually results in abandonment and waiver of the issue).

I.      Six-Month-Time-in-Care Ground

**¶13**       Mother argues that she failed to complete reunification services because she did not have access to a phone, and therefore insufficient evidence supported the finding that she substantially neglected or willfully refused to participate in services. *See* A.R.S. § 8–533(B)(8)(b).

**¶14**       Her argument is unavailing. Mother testified that during an April 2021 meeting, she told her caseworker that she did not have a phone. She also testified she was working full-time and living with family during this period. As the superior court noted, Mother did not explain why she could not use a phone from work, family, or friends. Even if phone access affected Mother's participation, at most, it was a factor for only the few months before the termination hearing and did not cause her lack of engagement during the year when both children were out of her care. Reasonable evidence supports the court's finding that Mother substantially neglected or willfully refused to remedy the circumstances causing the children to be in out-of-home placement.

II.     Reunification Services

**¶15**       Mother argues insufficient evidence supports the court's finding that DCS made diligent efforts to provide reunification services. DCS contends Mother waived this argument by not objecting earlier, but because Mother raised the issue at the severance hearing, we decline to apply waiver. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178, ¶¶ 13-14 (App. 2014) (stating that a parent may preserve her failure-to-make-a-diligent-effort argument "in a variety of ways," including "at a termination hearing").

**¶16**       To show diligent efforts, DCS must provide the parent "with the time and opportunity to participate in programs designed to help her to become an effective parent." *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235, ¶ 14 (App. 2011) (citation omitted). DCS should also "maintain consistent contact with the parent" and "make reasonable efforts to assist the parent in areas where compliance proves difficult." *Donald W.*

*v. Dep't of Child Safety*, 247 Ariz. 9, 23, ¶ 50 (App. 2019) (citation omitted). But DCS "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994) (citation omitted).

**¶17** Mother argues she could not participate in reunification services because she did not have a phone for several months in 2021 and DCS did not help her get one. Mother conceded, however, that she did not tell her case manager that she lacked a phone until one month before the termination hearing. Mother admitted that she obtained a phone after her disclosure and appeared at the hearing telephonically. And although Mother told her case manager once in 2020 that she could not participate in counseling because she did not have a phone, she then participated in a phone meeting with her case manager the next month. The record therefore does not support Mother's contention that DCS should have done more to provide her with a phone.

**¶18** Mother next contends DCS did not provide the Ph.D.-level therapist recommended by the consulting psychologist. The record contradicts this assertion, however. The case manager testified, and DCS records show, that DCS scheduled an intake with Southwest Behavioral Health, an agency that would have provided a Ph.D.-level counselor, but Mother did not attend. Mother did attend an intake appointment in January 2021 but did not complete any therapy sessions and was unsuccessfully discharged from the service. Reasonable evidence supports that DCS made a diligent effort to provide Mother with reunification services.

## CONCLUSION

**¶19** Because reasonable evidence supports the court's order terminating Mother's parental rights, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:     AA